UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CHINATRUST BANK (U.S.A.),

                Plaintiff,

— against —

SAMUEL PINTER, FAGIE PINTER
and AVRUHUM M. DONNER,

                Defendants.
---------------------------------------------------------X

**MEMORANDUM and ORDER**

04 CV 5331 (SLT)(KAM)

**TOWNES, United States District Judge[1]:**

    Plaintiff, Chinatrust Bank (U.S.A.) ("Plaintiff" or "Chinatrust"), brings this action against Samuel Pinter, Fagie Pinter, and Avruhum M. Donner to enforce guaranties of payment allegedly signed by them in connection with certain mortgage warehouse lines of credit extended by Plaintiff to Olympia Mortgage Corporation ("Olympia"). Chinatrust has discontinued its action against Fagie Pinter after apparently discovering that her signature on the guaranties purportedly signed by her had been forged. Plaintiff moves for summary judgment against Samuel Pinter and Avruhum Donner[2] ("Defendants" or "Guarantors") pursuant to Fed. R. Civ. P. 56(c). For the reasons set forth below, Plaintiff's motion is granted.

---

    [1]The Court wishes to acknowledge the very capable assistance of a student intern, Vincent Volino of Fordham Law School, in the preparation of this Memorandum and Order.

    [2]Although Defendant S. Pinter has opposed the motion in an Affidavit, Defendant Avruhum Donner has not submitted any papers in opposition to the motion. Therefore, the Court deems the plaintiff's arguments admitted by Donner. He is liable for the debt incurred by Olympia on that basis. Nevertheless, the Court has considered many of the arguments that could have been raised by Defendant Donner by virtue of its consideration of Defendant S. Pinter's opposition to the motion and rejects them for the reasons set forth below.

**BACKGROUND**[3]

In 1991 and 1992, Chinatrust, as lender, and Olympia, as borrower, entered into three Mortgage Warehouse and Security Agreements (the "Credit Agreements") that were executed on January 3, 1991, October 1, 1991, and August 5, 1992. (Affidavit of Anthony Oliva ("Oliva Aff.") at ¶¶ 5,6,7.)[4] Pursuant to the Credit Agreements, Chinatrust extended certain lines of credit to Olympia for the purpose of enabling Olympia to originate mortgage loans to third parties. In connection with the Credit Agreements, Olympia executed revolving promissory notes with Chinatrust ("Olympia Notes") under which Olympia obligated itself to pay the balance owed to Chinatrust under the Credit Agreements. (*See id.*) In connection with the Credit Agreements and the Olympia Notes, Samuel Pinter, and Avruhum M. Donner each executed four personal guaranties on January 3, 1991, October 1, 1991, August 5, 1992 and November 30, 1993 that provide:

> [the guarantor] absolutely and unconditionally guaranties and promises to pay to [Chinatrust] or its order, on demand, in legal tender of the United States of America, the indebtedness. . .of [Olympia] to [Chinatrust] on the terms and conditions set forth in this

---

[3] Although the Plaintiff has submitted a Statement of Undisputed Material Facts as required by Local Civil Rule 56.1(a), Defendant S. Pinter has not submitted a Counter-Statement as required by 56.1(b). Although S. Pinter's failure to comply with 56.1(b) is a basis for the Court to admit each numbered paragraph in the Plaintiff's Statement, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotations omitted). Since the exhibits are not particularly voluminous, this Court will exercise its discretion not to deem all numbered paragraphs in the Plaintiff's statement as admitted by Defendant S. Pinter. However, counsel for S. Pinter is admonished to review the Rule 56.1 requirements and to strictly adhere to them in any future proceedings before this Court.

[4] Anthony Oliva is the Senior Vice President of Chinatrust Bank.

>Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the
>obligations of Guarantor are continuing. (*See* Oliva Aff. ¶¶ 8,9; Exhibits F and G.)

On or about November 10, 2004, Olympia defaulted on its obligations under the Credit Agreements and the Olympia Notes. (Oliva Aff. at ¶12.) On November 16, 2004, Chinatrust notified Fagie Pinter, Samuel Pinter and Avruhum Donner of the default and demanded payment of $10,152, 971.84, representing what Chinatrust believed to be the amount owed to Chinatrust by Olympia at the time. (*See* Oliva Aff., Exhibit H.) Chinatrust then brought suit on December 8, 2004 seeking payment for that amount. (*See* Oliva Aff., Exhibit A.)

During the pendency of the suit, the Guarantors challenged the accuracy of the $10, 152, 971.84 figure. Specifically, the Guarantors alleged that Olympia had not been paid by Fannie Mae for mortgage notes sold by Olympia to Fannie Mae. In response, Chinatrust retained the firm of Anchin, Block and Anchin ("Anchin") to prepare an accounting report to determine whether mortgage notes originated by Olympia were sold to Fannie Mae and whether Fannie Mae paid Olympia for the notes. (*See* Oliva Aff. at ¶ 14.) Anchin determined that: (a) Olympia originated twenty-three mortgage loans that were in the total principal amount of $5,477,550 using $5,420,329.72 advanced by Chinatrust; (b) Olympia sold these notes to Fannie Mae in 2004 and Fannie Mae paid Olympia for these notes; (c) Olympia failed to repay the amount borrowed from Chinatrust. (*See* Oliva Aff., Exhibit I.)

In addition to the notes purchased by Fannie Mae, another loan was originated and sold by Olympia to the Government National Mortgage Association (the "GNMA note") using funds advanced by Chinatrust. (*See* Oliva Aff., Exhibit J.) Chinatrust was also not reimbursed for the money advanced by Chinatrust in connection with the GNMA note. With this note factored into the balance owed to Chinatrust by Olympia, Chinatrust concluded that Olympia was indebted to

Chinatrust in the amount of $5,532,822.72. (*See id.*) Based on the foregoing, Chinatrust seeks payment of $5,532,822.72 plus interest, and reasonable attorney's fees incurred in enforcing the guaranties.

Defendant S. Pinter asserts that he is not responsible for any debt owed to Chinatrust by Olympia under the Credit Agreements and Olympia Notes notwithstanding the personal guaranties signed by him for two primary reasons.[5] First, S. Pinter argues that Chinatrust's failure to identify the alleged forgery of the guaranty purportedly signed by Fagie Pinter in connection with the Credit Agreements and the Olympia Notes should immunize S. Pinter from liability for Olympia's debt. (*See* Pinter Aff. at ¶¶ 7-8, 11-15, 38.) Second, Defendant S. Pinter asserts that because he signed the guaranties outside of a Chinatrust bank location, allegedly in violation of N.Y. Banking Law § 105, the agreements are not enforceable. (*See* Pinter Aff. ¶¶ 11, 36-37.) Additionally, S. Pinter argues that Chinatrust's motion should be denied because "Chinatrust comes before this Court with unclean hands." (Pinter Aff. at ¶ 39.)[6]

---

[5] In his Affidavit in Opposition to the Motion, S. Pinter has also objected to the figure Chinatrust determined to be the amount owed to it by Olympia. (*See* Pinter Aff. at ¶¶ 21-35.) S. Pinter's challenge to that figure will be addressed below in Part D.

[6] S. Pinter also asserted a plethora of affirmative defenses in his answer to Plaintiff's complaint based on the following assertions: that Chinatrust made unauthorized changes to the loan documents executed in connection with the Credit Agreements; that Chinatrust failed to name necessary parties in the suit; that Chinatrust failed to mitigate its damages; that the guaranties are too vague and nonspecific to be enforceable; that the instant action is barred by the doctrine of collateral estoppel; that the Olympia loans had been paid, but that Plaintiff failed to properly credit the proceeds; and that the action is untimely under the applicable Statute of Limitations. S. Pinter also asserted a Lender's Liability Defense asserting that Chinatrust, "intentionally or negligently by certifying and processing various documents assisted Olympia employees in a scheme to steal large amounts of money belonging to Olympia." Defendant does not appear to be pursuing these defenses in light of the fact he did not specifically address them in his Affidavit in Opposition to the Motion. (*See* Pinter Aff.) Nevertheless, these arguments were considered and are rejected as set forth below.

4

**DISCUSSION**

*A.     Standard For Summary Judgment*

Summary judgment is a useful "tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d. Cir. 1993). It is generally appropriate to grant a motion for summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Phillips Med. Sys. Of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

B.  *Chinatrust Has Made a Prima Facie Showing of Entitlement To Summary Judgment*

Under New York law, a plaintiff seeking to enforce an individual guaranty establishes its prima facie entitlement to summary judgment by demonstrating: (1) the execution of the agreements at issue and; (2) nonpayment thereunder. *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453 (S.D.N.Y. 2003) (citing *Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, No. 93 Civ. 4949(LAP), 1995 WL 505891, at *3 (S.D.N.Y. Aug. 23, 1995)); *see White Rose Food v. Saleh*, 99 N.Y.2d 589, 591-92 (2003). The Plaintiff has met this burden. It is clear from the record that Olympia and Chinatrust entered into the Credit Agreements and Olympia Notes and that Defendants S. Pinter and Avruhum Donner duly executed personal guaranties in connection with these agreements. Furthermore, Chinatrust has sufficiently established Olympia's default under the Credit Agreements and the Olympia Notes and both Olympias' and the Guarantors' nonpayment of the outstanding debt owed to Chinatrust by Olympia.

C.  *Defendant S. Pinter's Defenses Do Not Raise a Genuine Issue of Material Fact*

Once a prima facie case has been established, the plaintiff is entitled to summary judgment unless the defendant can assert defenses that would raise a genuine issue of material

fact. *Valley Nat'l Bank*, 254 F. Supp. 2d at 454. None of Defendant S. Pinter's defenses are sufficient to raise a genuine issue of material fact.

### 1. *The Alleged Forgery*

Defendant S. Pinter asserts first that had he known that his wife Fagie Pinter's signature was a forgery, he would not have originally guaranteed Olympia's debt or continued to sign additional guaranties. (*See* Pinter Aff. at ¶42; Amended Answer of Samuel Pinter & Fagie Pinter at ¶¶ 10-12.) Second, S. Pinter contends that had Chinatrust spotted the forgery of Fagie Pinter's signature, S. Pinter would have been able to identify certain financial problems within Olympia that would have led S. Pinter and others affiliated within Olympia to address these problems at an early stage. (*See* Pinter Aff. at ¶¶ 11, 15, 41.) Further, S. Pinter contends that had he learned of the forgery he would have "terminated [his] relationship with Olympia and would have taken steps at that time to invalidate [his] own personal guaranty." (Pinter Aff. at ¶ 15.)

Chinatrust argues that forgery is a personal defense that is limited solely to the person whose signature is forged and which does not extend to other co-guarantors. (Plaintiff's Mem. of Law p. 8.) Chinatrust contends that S. Pinter's assertion that he would not have guaranteed Olympia's debt to Chinatrust had he known of the forgery of Fagie Pinter's signature is undercut by Defendant S. Pinter's deposition testimony admitting that he was unaware that Fagie Pinter's signature was on the guaranties purportedly signed by her at the time he signed his guaranties.[7]

---

[7]Defendant S. Pinter was deposed twice in this matter. The first deposition was conducted on May 25, 2005. The second deposition was conducted on July 12, 2005. The May 25, 2005 deposition will be cited as "Pinter Dep. I", and the July 12, 2005 deposition will be cited as "Pinter Dep. II".

(Pinter Dep. II at 8:8-25; 9: 8-18.) Chinatrust further argues that the Defendants waived any defense based on the forgery of Fagie Pinter's signature.[8] (Plaintiff's Memo of Law p. 9.)

Chinatrust correctly argues that the alleged forgery of Fagie Pinter's signature on a personal guaranty signed along with the guaranties executed by Defendants, if true, would not serve to immunize either defendant from liability under the guaranties duly executed by them. "New York law is fairly clear that '[i]n an action by a payee against one who has signed a note as surety, it is no defense thereto that the name of one or more of the obligors on such instrument has been forged, though the surety signed the same in the belief that the signatures were genuine, where it appears that the instrument was accepted by the payee without notice of the forgery.'" *Westrm-West Risk Mkts., Ltd. v. Lumbermens Mutual Cas. Co.*, 314 F. Supp. 2d 229, 241 (S.D.N.Y. 2004) (quoting *Morris Plan Co. of Albany v. Adler*, 126 Misc. 237, 238 (Sup. Ct. Albany Co. 1925). This rule is applicable in the context of guaranties because of the inherent similarities between a guaranty and a surety bond. *See Westrm-West Risk Mkts., Ltd.*, 314 F. Supp. 2d at 234-236 (characterizing surety bonds and guarantees as "similar transactions").

Defendant S. Pinter's argument that if he had been aware of the fact that Fagie Pinter's signature was forged he would not have executed the guaranties is unpersuasive. As Chinatrust points out, this assertion is unsupported by Defendant S. Pinter's own deposition testimony that he was unaware that Fagie Pinter's signature was even on the guaranties. (*See* Pinter Dep. II at 8:8-25, 9:8-18.) However, in any event, under New York law a bank owes no duty to a

---

[8]The guaranty signed by Defendant S. Pinter provided that the signer "waives any and all rights and defenses arising by reason of any disability or other defense of borrower." (Oliva Aff., Exhibits F & G at p.2.) The Court need not reach the issue of whether this waiver is enforceable because, as set forth below, it is clear that S. Pinter has no valid defense based on the forgery of Fagie Pinter's signature.

guarantor to authenticate or verify the genuineness of the signatures of other co-guarantors. *See Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.*, 214 A.D.2d 359, 360 (1st Dept. 1995) (holding that a bank owes no duty to a mortgagee to verify the genuineness of the signatures of other parties executing mortgage documents); *First Am. Title Ins. Co. of N.Y. v. Kevlin*, 203 A.D.2d 681, 682 (3rd Dept. 1994); *Money Store/Empire State, Inc. v. Catherine Lenke*, 151 A.D.2d 256, 257 (1st Dept. 1989). Although the forgery of Fagie Pinter's signature, if true, would certainly be a defense to an action against *her* for liability under the guaranty, the Defendants cannot escape liability under the guaranties indisputably signed by them. Therefore, because a bank owes no duty to verify the genuineness of one guarantor's signature to other co-guarantors, Defendant S. Pinter's arguments concerning Chinatrust's failure to identify the alleged forgery of Fagie Pinter's signature based on theories of negligence, failure to exercise ordinary care or the doctrines of collateral estoppel or unclean hands are rejected.[9]

### 2. *New York Banking Law § 105*

---

[9]Although Defendant S. Pinter does not raise fraud as a defense in connection with alleged forgery of his wife's signature in his answer, in his Affidavit in Opposition to the Plaintiff's motion, S. Pinter appears to be improperly raising an argument sounding in fraud for the first time in his opposition papers when he contends that, "[i]n the end, I am certain that the evidence will establish that Plaintiff was aware of the forgery of my wife's signature throughout its relationship with Olympia, but, due to its lucrative business arrangement with Olympia, it decided to look the other way, realizing that the guaranties were necessary for it to continue to fuel the Olympia machine, which in turn meant more business and profits for Chinatrust." (Pinter Aff. at ¶40.) S. Pinter does not present a scintilla of evidence to support a claim that Chinatrust was aware of the alleged forgery of Fagie Pinter's signature. Such a contention is entirely unsupported by the record. Further, it should be noted that if anyone was better situated to have known of the alleged forgery, it was S. Pinter because Fagie Pinter was his wife and because co-defendant Donner testified that he had reason to believe that S. Pinter's own brother committed the alleged forgery. (*See* Donner Dep. 46: 16-25; 47: 1-12.)

9

New York Banking Law § 105 provides, "[n]o bank or trust company or officer, director, agent or employee thereof, shall transact any part of its usual business of banking at any place other than its principal office, except that a bank or trust company may open and occupy one or more branch offices at any location in the state."

Defendant S. Pinter argues that Chinatrust violated § 105 by failing to require that the signatories to the Olympia guaranties sign the guaranties in a Chinatrust bank location. S. Pinter asserts that this renders the guaranties signed by him unenforceable because Chinatrust should not be allowed to profit from illegal activity. (Pinter Aff. at ¶37.) [10]

Chinatrust contends that nothing in the legislative history of § 105 supports S. Pinter's contention that a guaranty should be rendered unenforceable merely because it was signed outside of a bank location. Chinatrust argues that the intent of § 105 was to regulate the expansion of banks into branch offices outside of the city where the bank's principal place of business is located. Further, Chinatrust points out that S. Pinter is an experienced real estate investor who manages over one-hundred employees (Pinter Dep. I at 6:23-25, 7:1-13, 14:5-13), and notes that Pinter himself has admitted to signing numerous guaranties in locations other than a bank over the past thirty years. (Pinter Dep. II at 14:12-25, 15:1-4.)

---

[10] Defendant S. Pinter also argues that the statutory violation of § 105 facilitated the forgery of Fagie Pinter's signature and that "had plaintiff not engaged in such lax, improper and potentially illegal actions, [he] would not be a defendant in this action today." (Pinter Aff. at ¶36.) Thus, S. Pinter argues that because the statutory violation caused the forgery, the guaranties signed by S. Pinter should not be enforceable. The Court rejects this argument for the same reasons, discussed in Part C(1) and (C)(2), that it rejects S. Pinter's forgery defense. S. Pinter argues that the alleged forgery would have been prevented if the bank insisted that the guaranties be signed inside the bank. However, as set forth above, under New York law, S. Pinter cannot escape liability based on the alleged forgery of his wife's signature. A bank owes no duty to a guarantor to verify the signatures of other co-guarantors.

Initially, it should be noted that the question of whether Chinatrust breached this provision by obtaining the signatures of the Defendants on their respective personal guaranties outside of the bank's principal office is first a question for the New York State Banking Department. That agency is charged with addressing violations of the provisions of the Banking Law and issuing appropriate fines or sanctions. *See* N.Y. Banking Law §§ 10, 39, and 44; *Matter of Hudson-Harlem Valley T. & M. Co. v. White*, 263 A.D. 167 (3rd Dept. 1942). There appears to be no support in the legislative history of § 105 for Defendant S. Pinter's interpretation that a bank would violate this provision every time any loan document was signed outside the confines of a brick and mortar bank location since the intent of the statute is to regulate the expansion of banks into branch offices. *See White*, 263 A.D., at 169-171. However, even if it was determined that Chinatrust violated § 105, the guaranties themselves would still be enforceable.

Although a contract's terms may be lawful, it is true that a court may refuse to enforce a contract if it is closely connected with an unlawful act. For instance, a contract which is procured through bribery may, depending on the strength of the connection between the bribe and the obligation being sued upon, be rendered void even though the contract objective is lawful. *See Bankers Trust Co. v. Litton Sys., Inc.*, 599 F.2d 488, 491 (2d Cir. 1979); *Banque Franco-Hellenic de Commerce Int'l Et Maritime, S.A. v. Christophides*, 905 F. Supp. 182, 194 (S.D.N.Y. 1995), *vacated on other grounds*, 106 F.3d 22 (2d Cir. 1997).

However, the statutory violation of the Banking Law asserted in connection with the guaranties sought to be enforced herein is not the kind of serious infraction or criminal illegality which would render a contract void and unenforceable even though the contract objective itself

and performance thereunder is legal. *See id.* In fact, even when a contract itself is illegal (as opposed to a contract that is legal, but which is merely connected in some way to an illegal act) "it is not a foregone conclusion that New York law would preclude enforcement." *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group N.V.*, 28 F. Supp. 2d 126, 139 (S.D.N.Y. 1998), *aff'd*, No. 99-7172, 205 F.3d 1323(table), 1999 WL 1254512 (2d Cir. Dec. 9, 1999) (holding that "[e]very illegal contract is not unenforceable *per se* under New York law" and that illegality depends on a "variety of factors, such as the repugnance of the illegality. . . .") (emphasis in original). It seems clear, based on the case law cited above, that even if Chinatrust violated N.Y. Banking Law § 105 merely by allowing the guaranties to be signed outside of its bank locations, such a violation would not constitute an appropriate basis for rendering the guaranties unenforceable. Defendant S. Pinter's argument that the guaranty agreements should be rendered void because "a party who engages in improper or illegal activity may not profit therefrom" (Pinter Aff. at ¶ 37) is similarly unpersuasive because the statutory infraction asserted herein is not the kind of offense that would void a legal contract. *See Kidder, Peabody & Co., Inc.*, 28 F. Supp. 2d at 139.

### 3. *Statute of Limitations*

Defendant S. Pinter's affirmative defense that the instant action is barred by the applicable statute of limitations is unpersuasive. Irrespective of whether S. Pinter expressly waived his right to assert such a defense, it is well settled that "[u]nder New York law a cause of action upon a guaranty is governed by the six-year limitations period applicable to contracts." *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997) (citing N.Y.

C.P.L.R. § 213(2)). "Such a cause of action accrues, and hence the limitations period begins to run, when the debtor defaults on the underlying obligation." *Id.*

Here, Olympia defaulted on it's obligations to Chinatrust on or about November 10, 2004. (*See* Oliva Aff. at ¶12.) The action was brought well within the applicable Statute of Limitations on December 8, 2004. Thus, Defendant S. Pinter has absolutely no basis for his affirmative defense that this action is barred by the Statute of Limitations.

### 4. *Remaining Contentions*

The Court has considered S. Pinter's remaining affirmative defenses asserted in his answer, but not addressed by him in his Affidavit. Defenses based on the assertion that Chinatrust made unauthorized changes to certain loan documents and Chinatrust's purported failure to mitigate its damages are entirely unsupported by the record. These defenses as well as S. Pinter's defense that Chinatrust failed to name necessary parties and his defense that the guaranties are too vague and non-specific to be enforceable are without merit.

### D. *Amount Owed to Chinatrust*

Having concluded that the Defendants are liable to Chinatrust under the guaranties signed by them, the only remaining issue to be addressed is the amount that the Defendants owe Chinatrust. Although Defendant S. Pinter testified at his deposition that an Olympia employee had estimated that the amount due to Chinatrust by Olympia was approximately $5,550,000 after the deduction of collateral held by Chinatrust (Pinter Dep. I at 45, 50-51), Pinter now contests Chinatrust's assertion that it is owed $5,532,822.72. (*See* Pinter Aff. at ¶¶ 21-35.) In addition to his deposition testimony, there is other evidence in the record which undercuts Pinter's recent

13

challenge to the amount Chinatrust claims it is owed by Olympia. In one of the depositions taken in this case, it appears that both the Plaintiff and the Defendant were in general agreement that Chinatrust was owed approximately $5,500,000 and that counsel for Defendant S. Pinter was on the verge of entering into a stipulation to that effect. (*See* Kopf Dep. at 15-16.)

The Court finds that the $5,532,822.72 figure asserted by Chinatrust to represent the debt owed to Chinatrust by Olympia to be the correct amount based on the record. The report prepared by Anchin lists twenty-three mortgage notes in the total principle amount of $5,477,550 originated by Olympia in 2004 using $5,420,329.72 in funds advanced by Chinatrust. (*See* Oliva Aff., Exhibit I.) These notes were sold to Fannie Mae and according to the report, Fannie Mae indisputably paid Olympia for these notes. The funds Fannie Mae paid to Olympia were credited to Olympia's Business Checking Account #1302115712. Chinatrust advanced $5,420,329.72 to Olympia to fund these twenty-three loans and was not re-paid as required by the Credit Agreements and Olympia Notes. In addition to the $5,420,329.72 owed to it by Olympia for the twenty-three notes listed in the Anchin Report, Chinatrust also has established that it is owed an additional $112,493 for the GNMA note. (*See* Oliva Aff., Exhibit J.) This brings the total amount of the debt owed to Chinatrust by Olympia (and thus by S. Pinter and Donner as guarantors) to $5,532,822.72 ($5,420,329.72 for the notes sold to Fannie Mae and $112,493 for the GNMA note).

S. Pinter's purely conclusory challenge to the $5,532,822.72 figure is without merit. Pinter does not submit any evidence whatsoever to refute the calculations used in arriving at that figure. (*See* Pinter Aff. at ¶¶ 21-35). Further, his deposition testimony, which revealed that one of Olympia's employees determined that approximately $5,500,000 was owed to Chinatrust,

*(See* Pinter Dep. I at 45, 50-51), and the fact that his attorney appeared to be on the verge of stipulating to that approximate amount (*See* Kopf Dep. at 15-16) indicates that his current challenge is merely an eleventh hour attempt to forestall entry of judgment against him.

While S. Pinter tellingly admits in his Affidavit in Opposition that Olympia "*may* owe money to Chinatrust," he maintains that "plaintiff has not proved this fact by the preponderance of the evidence, in proper admissible form." (Pinter Aff. at ¶ 23.) To the contrary, Chinatrust has properly established through the production of the Credit Agreements, Olympia Notes, the personal guaranties signed by the Defendants, a sworn Affidavit of Chinatrust's Senior Vice President and the submission of the Anchin report that Olympia defaulted on its obligations to Chinatrust in the amount of $5,532,822.72 and that S. Pinter and Donner, as guarantors of Olympia are responsible for that debt. Where there can be no legal or factual dispute as to the amount owed by a guarantor in an action to enforce a guaranty, summary judgment is properly granted awarding the amount of the debt. *Orix Credit Alliance, Inc.*, No. 93 Civ. 4949(LAP), 1995 WL 505891, at *9 (S.D.N.Y. Aug. 23, 1995) (no legal or factual dispute as to the imposition of late charges on an unpaid balance). Such is the case here where the amount owed is established by straightforward calculations.

## CONCLUSION

For the reasons set forth above, the Plaintiff's motion for summary judgment is GRANTED in its entirety. Defendants Samuel Pinter and Avruhum M. Donner are liable jointly and severally to Chinatrust in the amount of $5,532,822.72.

Plaintiff's request for fees is denied without prejudice. If Plaintiff wishes to seek attorney's fees, Plaintiff must submit an application for attorney's fees within thirty (30) days of the date of this Order. The Clerk of Court shall enter judgment in favor of Plaintiff and against Defendants Samuel Pinter and Avruhum M. Donner.

SO ORDERED.

Dated: Brooklyn, New York
March 23, 2007

/s/
SANDRA L. TOWNES
United States District Judge