UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHINATRUST BANK (U.S.A.),

                           Plaintiff,

   — against —

SAMUEL PINTER, FAGIE PINTER
and AVRUHUM M. DONNER,

                           Defendants.
-----------------------------------------------------------X

**MEMORANDUM and ORDER**

04-CV-5331 (SLT)(KAM)

**TOWNES, United States District Judge**[1]**:**

      Plaintiff, Chinatrust Bank (U.S.A.) ("plaintiff" or "Chinatrust"), commenced this action against Samuel Pinter, Fagie Pinter, and Avruhum Donner to enforce guaranties of payment allegedly signed by them in connection with certain mortgage warehouse lines of credit extended by plaintiff to Olympia Mortgage Corporation ("Olympia"). On July 11, 2005, plaintiff discontinued its action against Fagie Pinter after discovering that her signature on the guaranties had been forged. Thereafter, plaintiff moved for summary judgment against Samuel Pinter and Avruhum Donner (collectively, "defendants") pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. In a Memorandum and Order dated March 23, 2007, this Court granted the motion, finding defendants jointly and severally liable to plaintiff in the amount of $5,532,822.72.

      Now, plaintiff moves for (a) an award of reasonable attorneys' fees and costs, and (b) prejudgment interest. For the reasons set forth below, plaintiff is awarded attorneys' fees in

---

[1]The Court wishes to acknowledge the capable assistance of a student intern, David G. Buffa of Brooklyn Law School, in the preparation of this Memorandum and Order.

the amount of $107,185.00, costs in the amount of $3,206.70, and prejudgment interest in the amount of $1,755,710.65, for a total of $1,866,102.35.

## *DISCUSSION*

### *A.    Attorneys' Fees and Costs*

Unlike numerous cases in which a party has sought attorneys' fees pursuant to a fee-shifting statute, this is a diversity case in which plaintiff seeks to recover its attorneys' fees and costs pursuant to a guarantee signed by defendants.  The guarantee contains the following provision:

> Guarantor agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees and legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorney's fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed to the court.

Affidavit of Anthony Olivia, in support of plaintiff's motion for summary judgment, sworn to October 27, 2005 ("Olivia Aff."), Exhs. F and G.

In support of their request for reasonable attorneys' fees, plaintiff's counsel, Thelen Reid Brown Raysman & Steiner LLP ("Thelen Reid"),[2] submitted an affidavit detailing the services it provided in this action and its contemporaneous billing records describing the nature of those services.  Affidavit of Kenneth M. Block, Esq., sworn to April 18, 2007 ("Block Aff."), ¶ 7,

---

[2] Plaintiff was originally represented by Brown, Raysman, Millerstien, Felder & Steiner LLP, which merged with Thelen Reid & Priest LLP, effective December 1, 2006, to form Thelen Reid, plaintiff's current counsel.

Exh. 3. Counsel's submissions demonstrate that it expended 398 hours on this case, amounting to $148,792.20 in legal fees and costs. Letter from Kenneth M. Block, Esq., dated May 8, 2008 ("Block Letter" ), Revised Exh. 2. Defendant has not contested plaintiff's motion for attorneys' fees and costs.

In New York,[3] when a contract provides for attorneys' fees, the court must order the losing party to pay the amount actually incurred, so long as those amounts are reasonable. *See Antidote Intern Films Inc. v. Bloomberg Pub. PLC,* 496 F. Supp. 2d 362, 363 (S.D.N.Y. 2007) (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)); *Goldberg v. Blue Ridge Farms, Inc.*, No. 04-5098, 2005 WL 1796116, at *3 (E.D.N.Y. July 26, 2005). In the Second Circuit, attorney fees are calculated using the "lodestar method," pursuant to which the reasonable number of hours spent is multiplied by a reasonable hourly rate. *See I.B. v. New York City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003). District courts have broad discretion to determine the reasonableness of hours and rates due to their general familiarity with the litigation. *Brady v. Wal-Mart Stores, Inc.,* 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006). Accordingly, hours that the court finds to be unnecessary, redundant, or excessive should be left out of the lodestar calculation. *Id.*, at 207. Additionally, a court may find that certain factors - such as an attorney's background, experience, or the overall success of the litigation - will justify rates that exceed the standard for the community. *Id.*, at 204.

Here, the number of hours expended by plaintiff's counsel are reasonable. While plaintiff's counsel's use of "block billing" caused the court some difficulty in assessing the

---

[3] Since this case is premised on diversity jurisdiction, and plaintiff relies on New York law in its submissions, this Court will apply the law of the forum state, New York. *See CT Indem. Co. v. 21st Century Transport Co.*, 186 F. Supp. 2d 264, 269 (E.D.N.Y. 2002).

reasonableness of the listed activities, *see Commission Express Nat'l, Inc. v. Rikhy*, No. 03-4050, 2006 WL 385323, at *5 (E.D.N.Y. Feb. 17, 2006), counsel's billing entries sufficiently describe the nature of the work performed during the three-year period of this litigation, which reasonably supports the number of hours expended.[4] In addition, the majority of the firm's 398 hours were performed by one partner and one associate.

Plaintiff's counsel argues that the rates billed by its attorneys are comparable to other law firms in New York City. *See* Block Aff. ¶ 8. However, the relevant community for determining the market rate is the geographic area in which the action was commenced and litigated. *See Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006). Courts in the Eastern District generally approve fees ranging from $200 to $300 per hour for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $60 to $75 for paralegals. *Commission Express,* 2006 WL 385323, at *6; *Aiello,* 2005 WL 1397202, at *6. Having considered the relevant factors regarding plaintiff's motion,[5] and given this Court's wide

---

[4]Although the vast majority of plaintiff's counsel's billing entries are quite descriptive, a number of billing entries of Kenneth Block, a partner at Thelen Reid, contain vague descriptions of his work, such as "reviewing documents" or "telephone conference regarding documents." While counsel is "not required . . . [to] describe in great detail how billable time is spent," *Aiello v. Town of Brookhaven*, No. 94-2622, 2005 WL 1397202, at *6 (E.D.N.Y. June 13, 2005), Mr. Block's general descriptions, especially when coupled with the firm's "block" timing, made the Court's evaluation of counsel's hours unnecessarily difficult. In the future, counsel should provide detailed explanations of all of its attorneys' work – if not for its clients' edification, then to aid courts ruling upon its fee applications.

[5]According to the Second Circuit, "the district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 184 (2d Cir. 2008).

4

discretion, *see Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998), the hourly rates charged by plaintiff's counsel are unreasonable.[6] Accordingly, plaintiff's award is adjusted as follows:

| Name | Position | Adjusted Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Michael Blumenthal | Partner | $400.00 | 0.70 | $280.00 |
| Kenneth M. Block | Partner | $400.00 | 158.20 | $63,280.00 |
| Andrew Kramer | Partner | $300.00 | 7.00 | $2,100.00 |
| Rachel Hollander | Partner | $300.00 | 30.60 | $9,180.00 |
| Melanie Finkel | Senior Associate | $250.00 | 29.90 | $7,475.00 |
| Olivia Milonas | Associate | $150.00 | 19.80 | $2,970.00 |
| Rachel Kramer | Associate | $150.00 | 1.20 | $180.00 |
| Cori Grosman | Associate | $150.00 | 8.60 | $1,290.00 |
| Leigh Hughes | Associate | $150.00 | 130.40 | $19,560.00 |
| Dennis Farrell | Managing Clerk | $75.00 | 1.10 | $82.50 |
| Maxine Lothian | Paralegal | $75.00 | 1.00 | $75.00 |
| Renee Labovitz | Paralegal | $75.00 | 9.50 | $712.50 |
| **Total** | | | **398.00** | **$107,185.00** |

As the above chart illustrates, the information reviewed by this Court – namely, the attorney profiles available on Thelen Reid's website – regarding the professional experience of partners Michael Blumenthal and Kenneth Block support an upward departure from the rates

---

[6]While plaintiff has not provided any evidence regarding the relevant attorneys' and paraprofessionals' backgrounds and expertise, the Court was "constrained to conduct its own Internet research into the qualifications and experience of these individuals," primarily from the Thelen Reid website. *Warner Bros. Entertainment, Inc. v. Carsagno*, No. 06 CV 2676, 2007 WL 1655666, at *8 (E.D.N.Y. June 4, 2007) (Report and Recommendation of Mann, M.J.); *see also U.S. ex rel. ATC Distribution Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150, 2007 WL 2522638, at *3 (S.D.N.Y. Sept. 7, 2007) (noting that courts have the discretion to search publicly-available sources, rather than dismiss a fee application, when the "moving party fails to disclose any information regarding the professionals performing those services") (internal quotation marks and citations omitted). The Court also relied on profiles listed on the Martindale-Hubble database for additional information regarding attorney experience and background.

prevailing in this district, although less than plaintiff has requested. *See Brady*, 455 F. Supp. 2d at 206. However, the attorney profiles for partners Rachel Hollander and Andrew Kramer lacked sufficient information regarding their experience to justify billing rates that exceed those prevailing in this district. In addition, the billing rates of the associates and paraprofessionals who worked on this matter are limited to the billing rates prevailing in this district because the Court lacks sufficient information to find that an upward departure is warranted. Accordingly, plaintiff is entitled to recover $107,185.00 in attorneys' fees.

Plaintiff also requests $7,260.54 for photocopies, mailing expenses, facsimiles, computerized research, telephone calls, transcript fees, and travel fees.[7] Courts in the Second Circuit generally award as costs "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee paying clients." *See King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 171 (E.D.N.Y. 2004) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). This excludes amounts that constitute an attorney's overhead, since those are not typically charged to a client. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Accordingly, the costs related to online research, which total $3,957.12, are not reasonable and are unrecoverable. *See JCS*, 325 F. Supp. 2d at 172 ("It appears that the judges in the Eastern District uniformly disallow applications for electronic research costs"). In addition, the Court finds that expenses labeled "miscellaneous," totaling $102.87, are not sufficiently described to warrant an award. Accordingly, plaintiff is entitled to recover $3,206.70 in costs and disbursements.

---

[7]Plaintiff mistakenly includes the amount $7,254.33 in the Block Affidavit as the amount it expended in costs and disbursements. However, the sum of all the expenses itemized in the billing records indicates that they expended $7,260.54 ($6.18 more than the amount included in the affidavit).

B.     *Prejudgment Interest*

Finally, plaintiff seeks $1,755,710.65 for prejudgment interest on the guarantees, in an amount totalling $5,532,822.72. Affidavit of Anthony Olivia, sworn to April 18, 2007 ("Olivia Interest Aff."), ¶ 1. The Mortgage Warehouse and Security Agreement (the "Credit Agreement") provides that in the event of default, interest accrues at the Chinatrust Bank prime rate plus 6.25 percent. *Id.*, ¶ 4. Under New York law, prejudgment interest is recoverable when such interest is sought pursuant to an express contract. *See* N.Y. C.P.L.R. § 5001(a); *see also In re Mid Island Hosp. Inc.,* 276 F.3d 123, 129 (2d. Cir. 2002) (noting that under New York law, an obligation to pay prejudgment interest is not presumed, but must be sought pursuant to an express or implied contract, statute, or court order). Moreover, when a rate is specified and agreed upon pursuant to a contract, the contractual rate of interest governs the calculation of damages from the earliest ascertainable date the cause of action existed until the date of judgment. *See* N.Y. C.P.L.R. § 5001(b); *see also Ames v. Dynasty Elec. Inc.*, No. 05-988, 2008 WL 1924276, at *6 (E.D.N.Y. May 1, 2008) (allowing for interest to accrue at the rate stated in the Wall Street Journal plus 2 percent).

Here, plaintiff submitted an affidavit and detailed interest chart calculating the amount owed at the default interest rate provided for by the Credit Agreement, from the date of default until the date of judgment. Olivia Interest Aff., Exh. A. The Court has reviewed these figures and finds that they accurately reflect the interest rate for the default period, and defendants have not submitted any documents to refute plaintiff's calculations. Therefore, pursuant to the Credit Agreement and guaranties, plaintiff is entitled to recover the amount of $1,755,719.65 in prejudgment interest.

Plaintiff also seeks post-judgment interest at a per diem rate of $2,228.49. Olivia Interest Aff. ¶ 4. However, under New York law, post-judgment interest is not governed by the contract. *See* N.Y. C.P.L.R. § 5002. As such, this Court will not award post-judgment interest at plaintiff's requested per diem rate, but rather the Clerk of Court will calculate the appropriate post-judgment interest rate.

## CONCLUSION

For the reasons set forth above, plaintiff's motion is granted, as against defendants Samuel Pinter and Avruhum Donner, jointly and severally, and it is awarded attorneys' fees in the amount of $107,185.00, costs in the amount of $3,206.70, and prejudgment interest in the amount of $1,755,710.65, for a total of $1,866,102.35. Post-judgment interest is to be determined by the Clerk of Court.

SO ORDERED.

Dated: Brooklyn, New York
July 31, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge